Robert N. Curry, Appellant, *v.* The President and Trustees of the Town of Mount Sterling, Appellees.

APPEAL FROM BROWN.

The corporation of Mount Sterling, like the corporation of the city of Springfield, has authority to open streets within the corporate limits, and the expedience of the act is left solely to the judgment of the board of trustees.

This power to open streets extends to all lands within the corporation, whether subdivided or not.

The publication of the ordinance which authorizes the opening of the street, was all the notice required; and if a party suffers a street to be opened through his land without objection, he cannot afterwards interpose a claim for compensation.

The statute which provides for the assessment in this instance, directs that injuries and benefits shall be alike considered, and if the property would sell for as much with as without the street, the jury might well consider that no damage had been sustained.

This cause was heard at the October term, 1853, of the Brown Circuit Court, Walker, Judge, presiding.

J. Grimshaw and M. Hay, for appellant.

J. W. Singleton and C. L. Higbee, for appellees.

Treat, C. J. The original proceedings in this case were the same as those in the case of Dunlap *v.* Mount Sterling, reported in 14 Illinois, 251. An ordinance was passed for the extension of a street, eighty feet in width and eighty rods in length, through the land of Curry; and a jury of freeholders decided

that he would not sustain any damages by the opening of the same. He prosecuted an appeal to the circuit court, which was dismissed on the ground that an appeal did not lie in such a case. He then brought the case to this court, and the order of dismissal was reversed for the reasons stated in Dunlap *v.* Mount Sterling.

The following proceedings were had in the circuit court after the cause was remanded. Curry entered a motion to dismiss the suit, because the corporation had no power to lay out a street through land not subdivided into town lots, and because he had no notice of the original proceedings. It was admitted that the ordinance was duly published in a newspaper of the town; and an order of the board of trustees recited that the corporation and Curry could not agree as to the compensation to be paid to the latter for the extension of the street through his land. It did not otherwise appear on the face of the original proceedings, that Curry had any notice of the passage of the ordinance or of the proceedings under it, before he took an appeal to the circuit court. The court refused to dismiss the suit; and a jury was then sworn to assess the damages that Curry would sustain by the opening of the street.

The corporation called as witnesses, Stout, Wells, Penkake, Sweet, Newby, Parker, Patterson, and Witty. Stout was of the opinion that Curry would not sustain any damages by the opening of the street, but that he would be benefited by laying off the land into town lots; the lots in the town were not all improved. Penkake was of the opinion that the land would be worth more with the street than without it; Curry would sustain no damages, for he could lay out the land into lots, and sell them for more than the land would bring. Wells thought the land would be worth more with than without the street, because it could then be laid out and sold as town lots; the corporation had ordered streets to be opened through the lands of Dunlap and Givins, by which one hundred acres might be laid off into town lots, eighty acres of which was well situated for the purpose. Sweet could not say that Curry would be injured by the opening of the street. Newby thought Curry would sustain no damages, for the reason that he could lay out the land into town lots, and sell them for more than the land would bring; the street as proposed to be opened would terminate in a field, and would not there connect with any street or road. Parker testified, that if he owned the land he would rather have the street opened; there were no natural difficulties in the way of opening the street, and Curry could do it himself by putting up the necessary fences. Patterson

thought the land would be worth as much after the opening of the street as before; the land was worth $50 per acre. Witty thought Curry would sustain no injury, because he could lay out the land into town and out lots. The corporation also proved that the land was assessed for taxation in 1847 at $9 per acre, and in 1852 at $25 per acre.

Curry then called as witnesses, L. Brockman, Vandeventer, J. H. Brockman, Putman, and Clack. L. Brockman was of the opinion that Curry would be injured by the opening of the street; the damages would be equal to the cost of making fences on both sides of the street; the land was worth $30 per acre. Vandeventer thought Curry would be damaged to the extent of the cost of the fences, and the worth of the land covered by the street; the fence would cost $100, and the street would include about two and one half acres of the land; the street would pass over a smooth field, and no work or expenditure would be necessary except fencing. J. H. Brockman believed that Curry would sustain damages equal to the cost of the fences, and the value of the land taken for the street; the land was worth $30 or $40 per acre; the opening of the street would benefit Curry, if he would lay out the land into town lots. Putman thought Curry would be injured by the loss of the land taken for the street, and by the expense of additional fencing; in his opinion more money could be made out of the land by laying it off into town lots than in any other way. Clack was of the opinion that Curry would be damaged to the extent of the cost of fencing the street, and the value of the land taken; he would not be compensated for this injury by laying out the land and selling it in town lots; there were already a good many vacant lots in the town.

The jury found that Curry would not sustain any damages by the opening of the street. The court refused to grant a new trial, and rendered judgment against Curry for the costs.

The objection that the corporation had no power to extend the street, was considered in the former case. It was there said: "The corporation of Mount Sterling has authority to open streets within its limits. It is invested with the same power in this respect as the city of Springfield; and such authority is expressly conferred on that city." Again: "The court cannot inquire into the expediency of opening the street. That is a matter for the sole consideration of the board of trustees." Upon further discussion and consideration of the question, we adhere to the opinion there expressed. This power of the corporation to extend and open streets applies to all lands within its boundaries, whether the same be laid out into town

lots or not. The extension of the street in question was a matter of discretion on the part of the board of trustees. The courts cannot review the exercise of that discretion.

The other objection taken to the proceedings was not well founded. The ordinance did not go into effect until it was published in a newspaper of the town. The publication apprised Curry that the street was to be extended through his property. That was all the notice that the statute contemplated or required. If he claimed damages because of the extension of the street, it was incumbent on him to make known his claim. If a party suffers a street to be opened through his land without objection, he cannot afterwards interpose a claim for compensation. He should insist upon his claim in due time, so that the corporation may vacate the ordinance, if it regards the assessment of damages as unreasonable. Ferris v. Ward, 4 Gilm. 499; County of Sangamon v. Brown, 13 Ill. 207. The presumption from the proceedings is, that Curry demanded compensation, and that the freeholders were summoned to pass upon the merits of his claim. It is recited in the proceedings, that the corporation and Curry could not agree upon the amount of compensation to be paid to the latter. This clearly implies that he had notice of the proceedings, and was actually claiming compensation. It was his own fault, if he was not present when the freeholders made the assessment. If dissatisfied with their decision, he was at liberty to have the case reheard in the circuit court. There was such a rehearing at his instance, and unless some error intervened therein to his prejudice, he has no just cause of complaint.

Did the court err in refusing to grant a new trial? The statute, under which the assessment was made, provides: " In ascertaining the amount of compensation for property taken for opening, widening, or altering any street, lane, avenue, or alley, the jury shall take into consideration the benefit as well as the injury happening by such opening, widening, or altering such street, lane, avenue, or alley." It was the duty of the jury to take into consideration as well the benefits as the injury that would result to Curry, by the opening of the street through his property. If the former was equal to the latter, he was not entitled to any damages. If the property would sell for as much with as without the street, the jury might well conclude that he would sustain no real injury. In such case, he would be fully compensated for the land taken and for any other disadvantage, by the enhanced value of the property. This court, in reference to a similar statute, remarked: " The true rule in estimating advantages and disadvantages, is to take

into consideration all which are appreciable, for the law makes no reservation or restriction. A most material inquiry is, whether in reference to the value of the whole tract through which the road passes, the property is benefited or injured. In the language of the supreme court of Pennsylvania, 8 Barr, 450, 'if benefited, the owner neither is, nor ought to be, entitled to any compensation whatever; if really injured, not a mere fanciful injury, compensation is to be given to the amount of the damages sustained by the owner.' There is nothing in this view which interferes with any constitutional provision." The A. & S. Railroad Company v. Carpenter, 14 Ill. 190. The evidence was conflicting and contradictory. Some of the witnesses believed that Curry would be injured to the extent of the value of the land appropriated, and the expense of erecting and maintaining fences on both sides of the street; while other witnesses, and the greater number, were of the opinion that the benefits would be equivalent to the injury; in other words, that the tract of land would be as valuable after the street was extended through it as before. It was the province of the jury to pass upon this testimony, and determine whether Curry was entitled to any compensation beyond what he would receive from the extension and opening of the street. We cannot say that they erred in deciding this question in the negative.

The judgment must be affirmed.

*Judgment affirmed.*