JOHN ARMSTRONG V. THE CITY OF TOPEKA.

1. CITY—*Addition*—*Plat*—*Acknowledgment.* The map or plat of a proposed addition to a city must be made and acknowledged by the owner of the land sought to be added to the city.

2. LAND, *When not Part of City.* When such map or plat embraces land not owned by the parties making and acknowledging the same, such land does not become a part of said city, even after all of said proposed addition is attempted to be added thereto by a city ordinance.

3. ———— *Payment of Tax*—*Acquiescence of Owner.* The payment of a tax upon land erroneously assessed in a city, is not such an acquiescence by the owner in an attempt to add said land to the city as would prevent him from asserting that such land was no part of said city.

*Error from Shawnee District Court.*

ACTION brought by *Armstrong* against *The City of Topeka,* to restrain the defendant from opening a street through the land of the plaintiff. A temporary restraining order was granted by the probate judge of Shawnee county. Trial at the September Term, 1886.

The court found substantially that plaintiff was the owner in fee simple of the property in question, being a tract of land 224 feet by 315 feet, bounded on all sides by streets, alleys, blocks and lots, regularly platted and laid out as a part of the city of Topeka; and also found that in 1869, Zenos King, the owner and proprietor of seventy-two acres surrounding the land in controversy, except upon the east, where it joined the then western boundary of the city of Topeka, caused his

said seventy-two acres, and also eight acres besides, including this land of Armstrong, to be duly laid out in lots, blocks, streets and alleys, in substantial conformity to law, so far as mere form is concerned, and made an acknowledgment, signed by himself and his wife, in which appeared the following as a part thereof:

"It is our purpose to have said plat duly recorded, with a view to the sale of said lots; but this representation and plat are not to be construed as warranting against the rights of any person or persons concerning the whole or any part of such portion of said addition as is contained within the bounds of the red dotted lines exhibited thereon."

The said dotted lines bounded the eight acres to which Zenos King had no title.

On the 21st day of February, 1871, an ordinance was duly passed by the mayor and council of the city of Topeka, annexing King's addition to the city of Topeka. On the 15th day of April, 1875, an ordinance was duly passed, reëstablishing the boundaries of said city, which ordinance included within the city limits the land in controversy in this action. On the 21st day of February, 1882, another ordinance was passed, also defining the boundaries of said city, which included within the city limits this land in question. On the 16th day of March, 1883, a large number of persons, citizens of said city, resided south and west of the land in controversy in this action, and the extension and opening of a street through the land in question was a public necessity, and proper and regular steps were taken to open said street across the land of plaintiff, provided the land was a part of the city; that since February, 1871, the plaintiff and his grantor regularly paid taxes on said property, the same having been assessed for taxes in the city of Topeka; that there is no evidence tending to show in this action that the plaintiff or his grantor at any time ever consented in writing that the land in controversy might be annexed to the city of Topeka, but at the date of the publication of said ordinance, and ever since,

28 — 36 KAS.

plaintiff and his grantor have been citizens of the state of Kansas.

Finding eighteen is as follows:

"The only question in controversy in this action is, whether the city of Topeka, defendant, at the time of the condemnation proceedings had jurisdiction to take and appropriate the land belonging to the plaintiff for a street, inasmuch as the land appropriated by said city had not at any time been surveyed and platted into lots, blocks, streets and alleys, by the proprietor thereof, nor annexed to the city of Topeka with the written consent of the plaintiff as grantor."

The court found as conclusions of law, that the city of Topeka, by its several ordinances referred to, intended to and did annex all of said King's addition to the city of Topeka, and the proprietors of said tracts have acquiesced in said annexation of their land ever since the passage of the ordinance of February, 1871, and by the acts of the plaintiff he had ratified in law the several acts of the defendant annexing and including the land in controversy, within the jurisdiction of the city of Topeka; that the proceedings of the city, in condemning and appropriating the plaintiff's land in controversy for a street, were regular in all respects, and the said city has jurisdiction to condemn and appropriate the land in question for the purpose of said street and the use of the public. New trial denied, and judgment for *The City* and against *Armstrong*. He brings the case here.

*Wm. P. Douthitt*, and *C. M. Foster*, for plaintiff in error.

*Jasper H. Moss*, city attorney, for defendant in error.

Opinion by HOLT, C.: The principal question to be considered is, whether this tract of land owned by the plaintiff is a part of the city of Topeka. If it is answered in the affirmative, then the judgment of the district court must be affirmed. Under the findings of fact we learn that one Zenos King laid out and platted his own land with the land in controversy, which he did not claim to own, as King's addition

to the city of Topeka, and afterward it was all attempted to be taken into the city as a part thereof by ordinance. We suppose that it is necessary ordinarily that land should be platted, and the plat should be filed in the office of the register of deeds in the county where the addition lies before the same can become a part of any city. Such plat, however, must be made by the owner of the land which is intended to be made a part of the city. (Compiled Laws of 1879, ch. 78, § 1; *City of Topeka v. Gillett*, 32 Kas. 438.)

*1. Plat to be made by owner of land.*

*2. Land, when not part of city.*

We believe that such map or plat, so acknowledged and filed, was necessary before the land in controversy became a part of the city, unless plaintiff has acquiesced in the annexation proceedings, and has stood by and without objection has seen the city appropriate money or make improvements upon the faith of the validity of the proceedings whereby the land was attempted to be annexed to the city. The only finding showing anything claimed to be an acquiescence on the part of the plaintiff, is the fact of his having regularly paid taxes upon said tract, the same having been assessed for taxation in the city of Topeka. There is no finding that any sum of money whatever had been expended upon said tract by said city, nor any improvements made thereon, upon the belief that it was a part thereof. The question to be solved is, whether the payment of a tax upon this property, assessed as a part of the city of Topeka, is a ratification in law of the several acts of the defendant in attempting to annex and include the land in controversy within the city limits. We do not believe that the payment of a tax, whether legally or illegally assessed, would be a ratification by plaintiff, or would in any manner estop him from denying that the land was a part of the city of Topeka. The plaintiff gains nothing thereby; the city loses nothing; on the contrary, the city obtains the advantage of the tax, and in this we fail to see any element of ratification, or anything that would estop the plaintiff in this matter. (*Strosser v. City of Ft. Wayne*, 100 Ind. 443; *Langworthy v.*

*3. Payment of tax, no ratification.*

*City of Dubuque*, 13 Iowa, 86. Also, see *Greencastle Township &c. v. Black*, 5 Ind. 557.)

Defendant in error in its brief contends that because this tract of land was entirely surrounded by and embraced within the geographical limits of the city of Topeka, the city could condemn and open streets across it, when the necessities of its citizens demand it; and cites *Curry v. Town of Mount Sterling*, 15 Ill. 320, and also *C. R. & P. Rld. Co. v. Town of Lake*, 71 Ill. 333; see also *Dunlap v. Town of Mount Sterling*, 14 Ill. 251. In the case of *Curry v. Town of Mount Sterling*, the question there was upon an appeal from the assessment of damages to Curry for opening a street through his land within the corporate limits of the town of Mount Sterling. It was tried upon the theory that Curry's tract of land was within the limits of the town; but he claimed that because the land was not properly platted, no street could be opened through the same. There was no contention that the land in controversy in that case was not really within the town limits; the only thing lacking was that it had not been platted. After he had taken his appeal from the assessment, in which he was not awarded any damages, he made a motion to dismiss the action, *because* the corporation had no power to lay out a street through land not properly subdivided into town lots.

This action is one brought to enjoin the opening of a street, *because* the land of Armstrong was never included within the corporate limits of the city of Topeka. In the case of *Curry v. Town of Mount Sterling*, and *Dunlap v. Town of Mount Sterling*, the fact in dispute in this case, namely, that the land was not within the city limits, was conceded in both of those cases.

We have no hesitation in saying that if the land of Armstrong had been, by his consent, added to the city of Topeka, he could not now be heard to dispute the right of the city to open a street through it. The necessities of the public might justify the exercise of the right of eminent domain over any land that was a part of the city of Topeka, and the expediency of such proceedings would be left with the proper authorities of the city. We do not believe, however, that the city

of Topeka has a right to take any land outside of its corporate limits for a public purpose without the consent of the owner.

Unquestionably the opening of this street would be a great benefit to many of the citizens of Topeka, and such street ought to be opened for the convenience, comfort and necessities of the people living in that portion of the city; but such arguments address themselves rather to the legislature than to the courts. There is ample provision now made for annexing such tracts of land as the one described in this controversy, to a city of the first class. (See ch. 99, Laws of 1887, "An act to amend an act to incorporate and regulate cities of the first class," etc., approved March 5, 1887.)

We recommend that the judgment of the district court be reversed, and that judgment be rendered for plaintiff upon the findings.

By the Court: It is so ordered.

All the Justices concurring.