F. W. BRESSER AND GEORGE H. BRESSER, Appellants, v. FREDERIKA SAARMAN *et al.,* Appellees.

**Deed of Adoption:** SUFFICIENCY. A deed of adoption which stated that the parent fully and voluntarily consented to the adoption of his children by a husband and wife "as their own children, the same as if unto them in lawful wedlock born," sufficiently complied with Code 1873, section 2308, which provides that the deed of adoption shall state that such child if given to the person adopting for the purpose of adopting as his own child.

Curative Acts: *Deed unlawfully recorded.* Under Code 1873, section 1967, as amended by Acts Twenty-fourth General Assembly, chapter 42, declaring that the acknowledgments of all deeds, etc., which have been duly recorded shall be legal and valid in all courts of the state, a deed of adoption though unlawfully recorded before the passage of the act became legal, though it was acknowledged by a justice of the peace of another state, without a certificate of his official character, authority to take acknowledgments and of the genuineness of the signature attached, as required by Code 1873, section 2309, which places deeds of adoption on the same plane as deeds to real estate with respect to the requisites for recording.

Adoption Statutes: CONSTRUCTION. Statutes governing the adoption of children are in derogation of the common law, and hence strictly construed.

Law of Sister State: PRESUMPTIONS: *Acknowledgments.* In the absence of proof to the contrary, the court will presume that the laws of a sister state are similar to those of its own, and hence that a justice of the peace of Nebraska could take and make acknowledgments of deeds of adoption.

*Appeal from Des Moines District Court.*—HON. JAMES D. SMYTH, Judge.

THURSDAY, JANUARY 17, 1901.

SUIT in equity for the partition of real estate. The pleadings put in issue the legality of an instrument of adoption. The trial court found that defendants Arthur and Lydia Westerbeck were and are the legally adopted children of William Saarman, deceased, and established and confirmed their shares in his estate as such. Plaintiffs appeal.—*Affirmed.*

*C. H. Mohland* and *Stutsman & Stutsman* for appellants.

*Seerley & Clark* for appellees.

DEEMER, J.—William Saarman died intestate, and without issue January 18, 1896. He left surviving his widow, Frederika Saarman, one of the defendants, a sister, Hanna Bresser, and the children of a deceased sister. After his death Hanna Bresser died, leaving as her sole and only heirs F. W. Bresser and G. H. Bresser, plaintiffs, and Louisa Bresser and Emma Schroeder, who, among others, are defendants. The Westerbeck children, who are also made defendants, are the heirs of the other sister. Two of these Westerbeck children, to-wit, Lydia and Arthur, claim that on the fourth day of February, 1884, they were legally adopted by William and Frederika Saarman as their children, and that as such they, with the widow, take all the property of which William died seized. The only question in the case is the legality of the articles of adoption. The statute in force when the articles of adoption were executed, omitting immaterial matters, read as follows: "In order thereto the consent of both parents, * * * the consent of the parent lawfully having the care and providing for the wants of the child, * * * shall be given to such adoption by an instrument in writing, signed by the parties and stating the names of the parents, * * * the names of the person adopting such child, and the residence of all, if known, and declaring the name by which such child is thereafter to be called and known, and stating also that such child is given to the person adopting, for the purpose of adoption as his own child." Code 1873, section 2308. "Such instrument in writing shall also be signed by the person adopting, and shall be acknowledged by all the parties thereto, in the same manner as deeds affecting real estate are required to be acknowledged; and shall be recorded in the recorder's office in the county where the person adopting the child resides, and shall be indexed with the names of the parents by adoption, as grantor and the child as grantee, in its original name, if

stated in the instrument." See Code 1873, section 2309. "Upon the execution, acknowledgment and filing for record of such instrument, the rights, duties and relations between the parents and child by adoption shall thereafter in all respects, including the right of inheritance, be the same that exists by law between parent and child by lawful birth." Code 1873, section 2310. Such statutes are in derogation of the common law, and are to be strictly construed. "A child by adoption cannot inherit from the parent by adoption unless the act of adoption has been done in strict accord with the terms of the statute. * * * When this is done, the act is complete. If the named requisites are not done, then the act is not complete, and the child cannot inherit from the. parent by adoption." *Tyler v. Reynolds,* 53 Iowa, 148. In that case it was held that failure to file the articles until after the death of the party making the adoption was fatal. In *Long v. Hewitt,* 44 Iowa, 363, the instrument was not signed by the person making the adoption, and it was held there was no adoption. In *Gill v. Sullivan,* 55 Iowa, 341, the instrument was properly executed, but was by accident almost entirely destroyed, so that recording was impossible, and it was held that the adopted child could not inherit. In *Shearer v. Weaver,* 56 Iowa, 585, the articles were not recorded until after the death of the adopting parent, and they were held invalid. In *McCollister v. Yard,* 90 Iowa, 622, the articles were not filed for record until after the child became of age, and it was held that this defeated the adoption; the court saying, among other things: "By the express terms of the statute, adoption is not completed until the instrument of adoption is executed, acknowledged, and filed for record. Until all these things are done, there is no adoption. * * * A compliance with all is essential to fix the status of the parties as parent and child by adoption." In *Hilpire v. Claude,* 109 Iowa, 159, the recorder failed to properly index the record. This defect was held immaterial, and the adoption was sustained.

The articles in question are as follows:

"Know all men, that I, Gottlieb Westerbeck, widower of Anna I. Westerbeck, born Saarman, deceased, of Fontanell, Washington county, Nebraska, the surviving parent of Lydia Westerbeck, now about twelve years old, and Arthur W. Westerbeck, now about six years old, the said minors being lawfully under my care and control, do hereby fully and voluntarily consent to the adoption of the said Lydia and Arthur W. as their own children, the same as if unto them in lawful wedlock born, by Wm. Saarman and Frederika Saarman, his wife, of Des Moines county, state of Iowa. Said parties hereby agree that the names of said minors hereafter shall be Lydia Saarman and Arthur W. Saarman. And the said William Saarman, Frederika Saarman, husband and wife, parents by adoption as aforesaid, do hereby freely and voluntarily and with all and singular the rights granted and imposed by chapter seven (7), title fifteen (15), of the Code, adopt the said minors as their own children, the same as if unto them in lawful wedlock born, to be hereafter known under the above names. As witness our hands this 14th day of February, A. D. 1884.

"[Signed]          Wilhelm Saarman
                   "Frederika Saarman.
                             his
                   "Gottlieb  X  Westerbeck.
                             mark.

"In the presence of A. D. Lewis."

"State of Nebraska, Washington County. Before me, a justice of the peace in and for said county and state, this 29th day of February, A. D. 1884, appeared Gottlieb Westerbeck, personally known to me to be the identical person whose name is subscribed to the foregoing articles of adoption as party thereto, and he acknowledged the same to be his voluntary act and deed. As witness my hand the day and

year last above written.  [Signed]    H. J. Carpenter, Jus-
tice of the Peace."

It will be noticed that they are properly signed; that
they give the name of the surviving parent, the names of the
children, the names of the persons adopting, and the res.-
dence of all; and that they state the names ·by which the
children are thereafter to be called; and the only question,
aside from the matter of acknowledgment and recording, is,
do they also state that the children are given to the persons
adopting " for the purpose of adoption as their own child
[children] ?"  The statement need not, we apprehend, be in
the exact language of the statute.  It is. sufficient if the state-
ment be in substantially the same language as that used in
the statute.  Let us look now to the language used in the
articles.  It says that the natural parent fully and volun-
tarily consents to the adoption of the children by William
and Frederika Saarman, the same as if to them in lawful
wedlock born.  Is this the equivalent of saying that he gives
the children to them for the purposes of adoption as their
own children ?  We think it is.  The adopting parents, in a
subsequent clause of the instrument, say that they, as parents
by adoption, freely and voluntarily, and with all and singu-
lar the rights granted and imposed by chapter 7, title 15, of
the Code (this being the title and chapter in which the sec-
tions hitherto quoted are found), adopt said minors as their
own children, the same as if unto them in lawful wedlock
born.  To this the natural parent of the children consents,
"the same as if unto them in lawful wedlock born."  Surely,
this is the exact equivalent of a saying that he gave them to
the adopting parents for the purpose of adoption as their own
children.  The articles, then, are sufficient.  Were they prop-
erly acknowledged and filed for record, as required by sec-
tions 2309 and 2310 of the Code ?  At the time they were
executed the Code provided that a deed conveying real es-
tate should not be deemed lawfully recorded, unless it had

previously been acknowledged or proved in a specified manner; that acknowledgment in the state should be made before some justice of the peace or notary public of the state; and, if without the state, before some notary public or justice of the peace; and, when made by a justice of the peace, a certificate under the official seal of the proper authority of the official character of said justice of the peace, and of his authority to take such acknowledgments, and of the genuineness of his signature, "shall accompany said certificate of acknowledgment." Presuming, as we must, in the absence of proof to the contrary, that the laws of Nebraska are similar to our own, it follows that a justice of the peace of that state may take and make acknowledgments. The instrument, so far as the adopting parents are concerned, was properly acknowledged before a notary public in this state. But it will be observed that the natural parent's acknowledgment was taken before a justice of the peace in the state of Nebraska, and that no certificate of the official character of the justice, of his authority to take acknowledgments, and of the genuineness of his signature accompanied the certificate of acknowledgment. This is said to be a fatal defect. Without this certificate under the official seal of the proper authority, the acknowledgment is invalid. *Jones v. Berkshire,* 15 Iowa, 248. And it follows that the articles were not lawfully recorded. This is practically conceded by counsel for appellee, but they contend that the defect was cured by Acts Twentieth General Assembly, chapter 203, and Acts Twenty-fourth General Assembly, chapter 42. The first of these acts purports to cure defective acknowledgments of deeds, mortgages, and conveyances made, filed, and recorded prior to January 1, 1884, and, of course, has no application to the case at bar. The second amends section 1967 of the Code of 1873, making it read as follows: "That the acknowledgments of all deeds,

mortgages or other instruments in writing, taken and certified previous to the 1st day of Feb., 1892, and which have been duly recorded in the proper counties of the state be, and the same are hereby, declared to be legal and valid in all courts of law and equity in this state  *  *  *  anything in the laws  *  *  *  of the state of Iowa in regard to the acknowledgments to the contrary notwithstanding." The amendatory act was passed March 24, 1892, and went into effect on the fourth day of July of that year; so that, if it is valid, it applies to the instrument in controversy. The phrase "duly recorded" means actually recorded, not legally. *Brinton v. Seevers,* 12 Iowa, 389. These curative acts have been sustained in a great number of cases. *Ferguson v. Williams,* 58 Iowa, 717; *Buckley v. Early,* 72 Iowa, 289; *Henderson v. Robinson,* 76 Iowa, 603; *Collins v. Valleau,* 79 Iowa, 626. The principle on which they were sustained seems to be that, where the requirement of a statute is one that might have been dispensed with by the legislature when it was enacted, it is within the power of the legislature to dispense with it by a subsequent statute in the nature of a curative act. *Richman v. Supervisors,* 77 Iowa, 513; *City of Clinton v. Walliker,* 98 Iowa, 655. Following this doctrine, it has been held that the legislature may retrospectively legalize the levy of taxes by a school district after the expiration of the time provided by statute for the making of such levy. *Chicago, R. I. & P. Ry. Co. v. Independent Dist. of Avoca,* 99 Iowa, 556. That the legislature might have dispensed with the acknowledgment and recording of articles of adoption is clear. Having this power, it could, by subsequent legislation, cure defects in the acknowledgment and recording thereof.

Thus far there is no serious dispute between the parties, but the appellants contend that the rule is not the same when applied to defectively acknowleged articles of adoption as when applied to defectively acknowledged deeds; that deeds

are valid and binding between the parties without being acknowledged and recorded, but that articles of adoption are not complete without being acknowledged and recorded as required by law, and that the legislature has no power to add to or make valid contracts otherwise invalid, to the detriment of other interested parties. They rely on *Goody-koontz v. Olsen,* 54 Iowa, 174, and *Greenwood v. Jenswold,* 69 Iowa, 53. In the first of these cases a tax deed was acknowledged by one not authorized to take acknowledgments, and in construing an act of the Thirteenth general assembly (chapter 160) validating acknowledgments of all deeds and mortgages and other instruments in writing which had been duly recorded prior to the passage of the act the court held that it did not apply to tax deeds, for the reason that by the terms of the revision (section 784) an unacknowledged tax deed did not convey title. The thought that there was nothing of record conveying title was predominant in the mind of the court, and question was made regarding the power of the legislature to devest a title where nothing had been done by the owner with that intent. In concluding the opinion, the court said, "But we think the act was designed to apply only where there was a legal deed antecedent to any attempted acknowledgment." In the *Greenwood Case* the defectively acknowledged deed was not signed by the grantor, nor was any consideration expressed, and the court held that, "as the record failed to show a valid conveyance, the curative act did not apply." It is certainly true that no one can be divested of his property by a curative act. His consent is a necessary prerequisite, and without it there is no transfer of title to legalize. The legislature cannot, under the guise of legalizing an acknowledgment, transfer the title to land where no such transfer was intended. In the case at bar the parties had fully signified their intention to make perfect articles of adoption. In so far as the articles themselves are con-

cerned, they are in due form, and contain all the statutory requirements. The justice of the peace who took the acknowledgment of the natural parent had full and perfect authority to do so. The instrument itself was actually recorded, and the only defect was the absence of a certificate of the official character of the justice of the peace, of his authority to take the acknowledgments, and of the genuineness of his signature. That the justice who made the acknowledgment was a justice at the time he took it, that the signature was and is his genuine signature, and that he was authorized by the laws of the state of Nebraska to take acknowledgments is conceded. Had a certificate showing these facts been attached to the instrument at the time the curative act was passed, and the instrument, with this certificate, recorded, there would be no doubt of the validity of the instrument. The legislature dispensed with this formality; and, as it might have done so in the first instance, we think the curative act is valid. In so far as contract rights are involved, the parties themselves had done all that was necessary to create proper articles of adoption. The state, however, is interested in the status of its citizens, and may provide the necessary prerequisites to the valid and legal adoption of children. The conditions it fixes may be changed from time to time, as prudence or wisdom may dictate; and when the parties themselves have done all that the law requires, have executed the proper articles, have appeared and acknowledged the same and filed them for record, the legislature may undoubtedly cure any defects in the certificate of acknowledgment thereto. As it might dispense with these certificates, it may lawfully cure those which are defective. If the parties themselves had neglected to sign proper articles, the point made by appellants would be well taken, for the legislature cannot, as a rule, legalize a contract that it cannot create. The assent of the parties themselves properly expressed, is a prerequisite to the legalization of a defectively acknowledged contract. That,

:consent appears in this case, and from the time that the cura-tive act was passed, if not before, Lydia and Arthur Wester-beck were the duly and legally adopted children of William Saarman, and as such were entitled to inherit from him. The .statute says that upon execution, acknowledgment, and re-·cording of the articles of adoption the rights, duties, and relations of parent and adopted child shall be the same as exists by law between parent and child by lawful birth. See, .as sustaining our conclusions, Cooley, Constitutional Limi-tations (6th ed.), p. 460 The decree of the district court is AFFIRMED.